UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CYBERONICS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-07-121 |
| | § | |
| WELLS FARGO BANK NATIONAL | § | |
| ASSOCIATION, | § | |
| | § | |
| Defendant. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I.      Introduction**

Pending before the Court are the competing motions for summary judgment filed by the plaintiff, Cyberonics, Inc. ("Cyberonics"), and by the defendant, Wells Fargo Bank, N.A. ("Wells Fargo").  Also before the Court is Wells Fargo's motion to strike Cyberonics' summary judgment evidence.  Having reviewed the motions, responses, and applicable law, the Court determines that Wells Fargo's motion to strike should be denied as moot, Wells Fargo's motion for partial summary judgment should be denied, and Cyberonics' motion for summary judgment should be granted.

**II.      Factual Background**

This dispute arises from an indenture agreement entered into by the parties on September 27, 2005.  Specifically, Cyberonics seeks a declaratory judgment that it has not breached that agreement, while Wells Fargo makes a counter-claim for breach of that agreement.

The facts in this case are virtually undisputed. Cyberonics is a Delaware corporation with its principal office in Houston, Texas; it designs, manufactures, and markets implantable medical devices for patients suffering from epilepsy and other neurological disorders. Wells Fargo is a nationally organized bank with its main office, as set forth in its articles of association, in South Dakota.

After Cyberonics decided to raise additional capital, the parties entered into an extensive and detailed indenture agreement in which Cyberonics would issue $125,000,000 of debt securities and Wells Fargo would serve as the trustee for the holders of the notes. The agreement makes the notes due on September 27, 2012, and requires Cyberonics to pay interest semiannually to the noteholders. The agreement requires also, among other things, that Cyberonics provide Wells Fargo with information and reports. The agreement states,

> SECTION 9.6. Reports. The Company shall deliver to the Trustee within 15 days after it files them with the SEC copies of the annual reports and of the information, documents and other reports (or copies of such portions of any of the foregoing as the SEC may by rules and regulations prescribe) which the Company is required to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act; *provided, however*, that the Company shall not be required to deliver to the Trustee any materials for which the Company has sought and received confidential treatment by the SEC. The Company shall also comply with the other provisions of Section 314(a) of the TIA.

(Pl. Mot. for Summary Judgment, ex. A-1.) The agreement provides that a breach of any covenant, including the reporting covenant, would be considered an event of default. In the event of a default, the defaulting party is given 60 days after being served with notice to cure the default. Finally, the agreement allows Wells Fargo to accelerate the notes if Cyberonics defaults and fails to cure the default within the 60 day period.

On June 26, 2006, Cyberonics filed an 8-K report that: 1) confirmed that the SEC was conducting an informal inquiry into stock option grants issued by Cyberonics; 2) notified shareholders that the U.S. Attorney's office for the Southern District of New York had issued a subpoena to Cyberonics; and, 3) announced that Cyberonics would retain counsel to investigate the stock option grant practice.  On July 13, Cyberonics filed a Notification of Late Filing announcing that it would be unable to timely file its 10-K report, which had been due on July 12.  On July 27, Cyberonics filed an 8-K stating that it was still unable to file its 10-K for the previous year because an internal review of the stock option grants had not been completed.  On July 28, 2006, Wells Fargo sent a notice of default and demand for cure to Cyberonics.

On August 1, Cyberonics responded to the notice and argued that no default had occurred because section 9.6 imposed on it only an obligation to deliver copies of reports, documents, and information after they had been filed with the SEC, not an obligation to timely file.  Wells Fargo rejected that argument and insisted that a default had occurred.  On September 27, after the 60 day period had elapsed, Wells Fargo sent a notice of acceleration declaring the notes due and demanding payment of the principal, accrued and unpaid interest, fees, and expenses.

On October 3, 2006, Cyberonics sued in state court for declaratory relief and attorneys fees.  On January 10, 2007, Wells Fargo properly removed the suit to federal court and subsequently asserted a cross-claim for breach of contract.  Wells Fargo argues that it is entitled to the relief of acceleration, or in the alternative, more than $20 million in damages resulting from the breach.

### III.    Parties' Contentions

Cyberonics contends that the clear language of the agreement imposed only an obligation to provide Wells Fargo with copies of documents and reports that had already been filed with the SEC within 15 days of its filing.  It argues that because the annual report had not yet been filed, it had no obligation to provide a copy of that report to Wells Fargo on July 27, 2006 (or any other date before the 15 days after it actually filed the report).  It argues further that it did file several 8-K reports with the SEC, and had provided copies to Wells Fargo, keeping it and other investors informed of business operations.  Finally, it argues that even if the contract has been breached, principles of equity should intervene because acceleration of the notes is a heavy penalty for the alleged breach.

For its part, Wells Fargo contends that the clear language of the contract required that Cyberonics submit copies of reports submitted to the SEC within 15 days of such reports being due to the SEC.  It argues that because Cyberonics was required to submit its annual report to the SEC by July 12, 2006, Cyberonics breached the agreement by not providing Wells Fargo with a copy of the annual report by July 27.  It argues further that because it had not cured the breach within 60 days, as required by the agreement, it is entitled to an acceleration of the notes and applicable fees and expenses.  It argues in the alternative that it is entitled to damages equal to the difference between the par value of the notes and their market value on the date the agreement was allegedly breached. Finally, Wells Fargo argues that principles of equity cannot save Cyberonics because acceleration was an agreed upon remedy for breach of the agreement.

## IV.    Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, a court must look to the substantive law underlying the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The indenture agreement is governed by the laws of the State of New York.  (Pl. Mot. for Summary Judgment, ex. A-1, § 14.11).  Under New York law, when clear and unambiguous language is used, a contract should be enforced according to its own terms. *R/S Assocs. v. N.Y. Job Dev. Auth.*, 771 N.E.2d 240, 242 (N.Y. 2002); *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990).   "Whether or not a writing is ambiguous is a question of law to be resolved by the courts."  *Giancontieri*, 566 N.E.2d at 642.  A court should construe an agreement to effectuate the parties' intent, *see Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d  498, 501 (N.Y. 2006), with reference to the agreement as a whole.  *See Kass v. Kass*, 696 N.E.2d 174, 180–81 (N.Y. 1998).

## V.    Analysis and Discussion

As a preliminary matter, Wells Fargo  also asks the Court to strike Cyberonics' summary judgment evidence based on several evidentiary objections.  Although Wells Fargo correctly notes that state law applies to matters relating to the admission of extrinsic evidence in the aid of  contract interpretation  and that evidentiary rulings are

within the trial court's discretion, it incorrectly states that Texas evidence law applies. Even though this case is before this Court on diversity grounds, the Federal Rules of Evidence apply.  Fed. R. Evid. 101; *see also Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993).  However, because the contract is susceptible of interpretation as a matter of law and the evidence of which Wells Fargo complains is superfluous to that interpretation, the motion to strike is denied as moot.

There is no dispute as to the underlying facts in this case:  1) Cyberonics and Wells Fargo entered into the indenture agreement; 2) Cyberonics did not file its annual report for the fiscal year ending April 28, 2006 within the 75 day period set out by the SEC; 3) Cyberonics is current on interest payments and filed several 8-K reports with the SEC from the time the 10-K report was due in July of 2006 until it filed the 10-K report in January of 2007; and, 4) Cyberonics provided a copy of the 10-K report to Wells Fargo within 15 days of having filed it.  In addition, the parties agree that the indenture agreement is unambiguous, although they disagree as to the meaning.  Thus, the only issue before the Court is the meaning of section 9.6 of the agreement.

To Cyberonics, the provision requires it to furnish Wells Fargo with a copy of any report filed with the SEC within 15 days of that report having actually been filed.  To Wells Fargo, the provision requires Cyberonics to 1) timely file reports, documents, and information with the SEC and 2) provide Wells Fargo with a copy of any such filing within 15 days; as a corollary, any failure to timely file information with the SEC is an event of default.

Having reviewed the agreement, the Court agrees with Cyberonics.  First, the operable language requires Cyberonics to:

> deliver to the Trustee *within 15 days after it files them with the SEC* copies
> of the annual reports and of the information, documents and other reports
> (or copies of such portions of any of the foregoing as the SEC may by
> rules and regulations prescribe) which the Company is required to file
> with the SEC pursuant to Section 13 or 15(d) of the Exchange Act.

(Pl. Mot. for Summary Judgment, ex. A-1) (emphasis added).  The language clearly indicates that the reports or other documents are to be filed first with the SEC, with copies provided to Wells Fargo within 15 days of that occurrence.

Wells Fargo contends that the phrase "which the company is required to file with the SEC pursuant to . . . the Exchange Act" incorporates the obligation to file the reports timely.  In other words, Wells Fargo urges the Court to read that provision as: "The Company shall file with the SEC the annual reports and the information, documents and other reports (or copies of such portions of any of the foregoing as the SEC may by rules and regulations prescribe) pursuant to the requirements of Section 13 or 15(d) of the Exchange Act and shall deliver copies to the Trustee within 15 days after so filing."

That is not, however, how section 9.6 reads.  The provision unambiguously requires only that Cyberonics deliver copies of the annual reports and other documents to Wells Fargo within 15 days after having filed those documents.  The phrase "which the Company is required to file with the SEC pursuant to . . . the Exchange Act" is a modifier of the types of reports that Cyberonics is required to deliver to Wells Fargo, not an additional obligation.  Had the parties desired to impose a filing obligation rather than a delivery obligation, they could have easily done so.

Wells Fargo suggests that the reference to the Trust Indenture Act § 314(a), 15 U.S.C. § 77nnn (2006), reflects such an intention.  However, although § 314(a)(1) is virtually identical to section 9.6 of the agreement, it is actually less stringent than the agreement because it does not specify the time by which Cyberonics must provide Wells

Fargo with copies of information filed with the SEC.  Moreover, it appears that the parties intended to replace § 314(a)(1) with their own requirements for the purposes of their agreement (upon which any breach of the contract claim must be based).  This is evidenced by the provision's closing sentence: "The Company shall also comply *with the other provisions* of Section 314(a) of the TIA (emphasis added)."  Hence, the Trust Indenture Act is of no aid to Wells Fargo's position.

Wells Fargo also argues that only its interpretation of section 9.6 makes any sense.  In short, Wells Fargo contends that because it can already obtain documents and reports filed with the SEC from the EDGAR system, section 9.6 is meaningless if read as only requiring copies of documents already filed with the SEC and not as an obligation to actually file with the SEC.  Again, Wells Fargo's argument overlooks the plain language of the provision.  It also overlooks another crucial fact that had the parties intended to require filing of the documents, section 9.6 could easily have been written to do just that.  If, as Wells Fargo contends, the objective of section 9.6 was to insure filings consistent with SEC requirements and guidelines, the parties could have simply declared so.  Instead, the parties agreed that Cyberonics would deliver to Wells Fargo copies of reports after it had filed them with the SEC.  The agreement should be enforced as it is clearly and unambiguously written, *see R/S Assocs.*, 771 N.E.2d at 242; *Giancontieri*, 566 N.E.2d at 642, and not read as Wells Fargo now asserts that it should be.

Wells Fargo urges the Court to adopt the reasoning of *Bank of New York v. Bearingpoint*, 824 N.Y.S.2d 752 (N.Y. Sup. Ct. 2006) (unpublished table decision).  In *Bearingpoint*, the court interpreted a very similar provision as requiring the company to file reports with the SEC and to deliver copies of those filings to the trustee.  Although it

decides a similar issue, *Bearingpoint* is an unpublished decision from a state trial court and is not binding on this Court.  *See King v. Order of Travelers*, 333 U.S. 153, 160–61 (1948); *Calvin Klein Ltd. v. Trylon Trucking Corp.*, 892 F.2d 191, 195 (2d Cir. 1989); *Hill v. U.S. Fid. & Guar. Co.*, 428 F.2d 112, 114 (5th Cir. 1970); *Collins v. Olin*, 418 F. Supp. 2d 34, 36 n.17 (D. Conn. 2006).   The case was initially appealed but then withdrawn; therefore, no New York appellate court reviewed that decision.  *Bank of N.Y. v. Bearingpoint, Inc.*, No. M-6818X, 2007 N.Y. App. Div. LEXIS 524 (N.Y. App. Div. Jan. 16, 2007) (appeal withdrawn).  Despite the *Bearingpoint* decision, the Court is not persuaded that the agreement between Cyberonics and Wells Fargo imposed any obligation upon Cyberonics other than to provide Wells Fargo with copies of documents and reports after those documents and reports had been filed with the SEC.  As required by New York law, this Court will enforce the agreement as it is written.  *R/S Assocs.*, 771 N.E.2d at 242; *Giancontieri*, 566 N.E.2d at 642.

It is worth noting, however, that in *Bearingpoint*, the company disavowed any obligation to file information with the SEC whatsoever.  In fact, the company failed to file annual and quarterly reports in 2005.  Not until September of 2005, did the trustee give notice of default to the company, and it did not make a demand for acceleration until November of 2005.  Moreover, the trustee complained that the company 1) failed to file any reports with the SEC at all; 2) did not provide to the trustee substantially the same information that would be reported to the SEC; and, 3) had still not filed any of its reports with the SEC as of the date of the complaint being filed.  Here, Wells Fargo issued its notice and demand the day after the alleged default and failure to cure periods had lapsed.  Nevertheless, Cyberonics continued to provide information about its operations through

8-K filings and filed its 10-K report, albeit six months late, with a copy to Wells Fargo within 15 days of so filing. After examining the agreement in this case and *Bearingpoint*, the obvious intent of section 9.6 is not to obligate the company to file in accordance with the Exchange Act, but to keep the trustee informed of company developments. Cyberonics satisfied that requirement through 8-K filings. More importantly, it met its express contractual obligation by providing a copy of the annual report within 15 days of having filed that report with the SEC.

In sum, Cyberonics satisfied its contractual obligations and has not breached the agreement. Thus, it is entitled to judgment as a matter of law for declaratory relief and the Court need not address whether principles of equity should intervene. Wells Fargo urges an interpretation of the agreement that is not supported by the clear and unambiguous language of the agreement. Therefore, Wells Fargo's motion for summary judgment is unavailing.

## VI.    Conclusion

Because the contract can be interpreted on its face and the motion for summary judgment can be decided without reference to the summary judgment evidence of which Wells Fargo complains, Wells Fargo's motion to strike is DENIED as moot. Because the agreement required only delivery of copies of documents having actually been filed with the SEC, Cyberonics has not breached the agreement and its motion for summary judgment on its claim for declaratory relief is GRANTED and Wells Fargo's motion for summary judgment is DENIED. Because Cyberonics is successful on its declaratory action and has requested attorneys' fees, Cyberonics shall file, within 10 days of the entry

of this Memorandum Opinion, an affidavit in support of its request for attorneys' fees.

Wells Fargo shall respond within 10 days of the filing of Cyberonics' affidavit.

**IT IS SO ORDERED.   ENTERED**, this 13th day of June, 2007.


Kenneth M. Hoyt
United States District Judge